UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-470-GWU

ELMER FEE, JR., PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

06-470 Fee

       Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

06-470 Fee

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

06-470 Fee

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

06-470 Fee

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-470 Fee

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

06-470 Fee

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Elmer Fee, Jr., was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic neck and back pain due to degenerative disc disease of the cervical and thoracic spine, osteoarthritis in the back, hips, and shoulders, and GERD. (Tr. 22). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to perform a full range of "medium" level exertion, and proceeded to apply Rule 203.14 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to an individual of Mr. Fee's age, education, and work experience, which directs a conclusion of "not disabled." (Tr. 23-8). The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the plaintiff's Date Last Insured (DLI) was December 31, 1998, meaning that he had to establish

06-470 Fee

disability prior to this date in order to be eligible for DIB benefits. His SSI application is not affected.[1]

While the court finds that there is substantial evidence to support a finding that the plaintiff was not disabled prior to December 31, 1998, substantial evidence does not support a determination that he was capable of "medium" level exertion with no other limitations through the date of the ALJ's decision. Accordingly, the decision will be affirmed as far as the plaintiff's DIB application is concerned, but for the reasons that follow, will be remanded for further consideration of his SSI application.

Office notes from the plaintiff's treating family physician, Dr. Sharon Fogleman, reflect that he had been treated by her for back problems since at least February, 1998. (Tr. 345). At that time, although Mr. Fee reported that he had not worked for two years due to pain that occurred in his construction job, the medication Naproxen worked "pretty well" for his back pain. Dr. Fogleman found tenderness in the thoracic, cervical and lower lumbar areas, but suspected that most of his symptoms were musculoskeletal and he would benefit from a back exercise

---

[1] The ALJ noted that there had been a final decision by an ALJ dated March 25, 1998 on a previous application, which had limited Mr. Fee to "medium" exertion and also contained non-exertional limitations related to mental impairments. (Tr. 23). However, in view of the fact that current evidence did not contain any evidence of mental health treatment or medication, the ALJ determined that there had been an improvement in Mr. Fee's condition, and no mental health impairments were present.

06-470 Fee

program. (Tr. 343). Other problems included heartburn, borderline hypertension, and some shortness of breath with exertion. (Id.). Early in 1998, testing showed positive H. pylori, a possible cause of heartburn, and this was treated with medication. (Id.). There is no evidence of specific functional restrictions prior to the DLI.

After continued complaints of back pain, especially in late 1999, Dr. Fogleman obtained an MRI of the lumbosacral spine which was read as being essentially negative. (Tr. 339). In October, 2002, Mr. Fee was complaining of arthritis pains in his back and hands which caused "some problems with construction work at times." (Tr. 338). Dr. Fogleman found only mild tenderness of the lumbar and cervical spine with "fairly good" range of motion and mild crepitus of the shoulder. (Id.). She diagnosed osteoarthritis and "overuse syndrome" of the shoulders, along with borderline hypertension possibly related to tobacco use. (Id.). Therefore, as late as October 2002 there is evidence that the plaintiff may have been performing work activity.[2]

Mr. Fee reported worsening back pain to Dr. Fogleman in February, 2003 "such that he feels unable to do carpentry work as he is trained." (Tr. 337). Pain medication was ineffective and made his stomach hurt. (Id.). X-rays of the lumbar

---

[2]The plaintiff testified that he had attended an orientation for a job and received payment, but physically was unable to perform the work involved.

9

06-470 Fee

spine showed "minimal" degenerative changes, and there was some pain on range of motion testing of the back, hip joints, and trapezius muscles. (Id.). Dr. Fogleman prescribed Prednisone, Lortab, and physical therapy, although the therapy was discontinued soon thereafter because the plaintiff said it was of no benefit. (Tr. 336).

Dr. Hughes Helm conducted a consultative examination of Mr. Fee on March 23, 2003. He noted that the plaintiff had a careful gait and a mildly stooped station, and was able to walk on his heels, but not on his toes. (Tr. 298). Although the narrative portion of Dr. Helm's report is confusingly written, an attached range of motion chart shows significantly decreased ranges of motion in the shoulders, cervical spine rotation, right hand, hips, knees, and lumbosacral spine. (Tr. 301-2).[3] Dr. Helm concluded that the plaintiff had a "decreased range of motion in a number of joints," but had "no obvious impairments to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, or traveling <u>other</u> than some osteoarthritis in various joints with some pain and stiffness." (Tr. 299) (emphasis added). Viewed as a whole, Dr. Helm's report showed a considerable restriction in ranges of motion due to osteoarthritis and a conclusion that physical activities would be limited by the pain and stiffness of osteoarthritis. Unfortunately, a state agency

---

[3]As an example, the chart makes clear that the plaintiff was able to bend forward only 30 degrees at the waist, with a normal value being 90 degrees (Tr. 302), although this is written in the narrative portion of the report as "normal flexion extension 0-30 degrees." (Tr. 299). There are numerous other examples in the narrative report of Dr. Helm describing as "normal" what are actually markedly reduced ranges of motion.

reviewing physician, Dr. P. Saranga, in determining that Mr. Fee's impairments were not "severe," appears to have overlooked some of Dr. Helm's findings, since he noted a "normal" range of motion. (Tr. 304). Nor did Dr. Saranga comment on the limitations which the examiner implied would flow from his findings. A subsequent reviewer, Dr. C. Hernandez, later affirmed Dr. Saranga without additional comment. (Tr. 357).

Dr. Fogleman continued to treat Mr. Fee in 2003 and 2004. In June, 2003 he complained of worsening shoulder, arm, and back pain, which limited what he could do "without putting me down in bed." (Tr. 336). Dr. Fogleman found pain and stiffness in the lumbar spine and positive straight leg raising, "more on the left side," and diagnosed osteoarthritis of the lumbar spine "with increasing pain." (Tr. 335). In October, 2004, Dr. Fogleman found the plaintiff's flexion at the waist "very stiff" with pain at about 45 degrees, and he also had pain with side-to-side movement of more than 20 degrees and hyperextension of about 10 degrees. (Tr. 359). She diagnosed low back syndrome with mild degenerative osteoarthritis on x-ray. (Tr. 346, 359). In November, the plaintiff's back was "very stiff" and he could flex only 40 degrees at the waist. (Tr. 358). There was no evidence of inflammatory arthritis on laboratory testing, however. (Tr. 358, 360-1).

In February, 2004, Mr. Fee made two office visits, with Dr. Fogleman continuing to find back stiffness and tenderness. (Tr. 368). On February 27, she

06-470 Fee

completed a functional capacity assessment at the plaintiff's request, which limits Mr. Fee to sedentary level lifting, less than full-time sitting and standing, a need to frequently alternate sitting and standing at will, never twisting, stooping, or climbing ladders, occasionally stooping and crouching, having limitations on reaching, handling, fingering, pushing, and pulling, a need to avoid all exposure to extreme cold, avoid moderate exposure to hazards such as machinery and heights, and avoid concentrated exposure to wetness and humidity. (Tr. 364-6). In addition to pain with all postural activities, stiffness, and reduced range of motion, Dr. Fogleman cited the plaintiff's inability to hear a whisper at four feet behind his left ear and at six feet behind his right ear, as a basis for the need to avoid hazards. (Id.).

Dr. Mark Burns conducted a consultative examination of the plaintiff on March 8, 2004 and found no restriction in his range of motion in any joint, although the physician added almost as an afterthought that Mr. Fee complained of pain during the orthopedic evaluation. (Tr. 385-8). Dr. Burns, who did no objective testing and who did not have any records to review, concluded that Mr. Fee would have no functional limitations. (Tr. 389-92).

Further office notes from Dr. Fogleman include a January 11, 2006 office note at which the physician continued to find tenderness over the lumbar spine, which "appears to be quite stiff." (Tr. 377). She renewed prescriptions for Ibuprofen and Lortab. (Id.).

12

06-470 Fee

In summary, the evidence from examining sources supporting a residual functional capacity for a full range of medium level work consists of a one-time examination by Dr. Burns, who had no records to review. Evidence from non-examiners which supports the residual functional capacity consists of conclusory statements by state agency reviewers who apparently misread or misinterpreted the report of Dr. Helm and who did not have the opportunity to review the opinion of the treating source.

The ALJ rejected Dr. Fogleman's restrictions because they appeared to be based on his statements at a concurrent office visit, and because two consultative examiners found normal physical evaluations and, despite pain, "was able to perform all [maneuvers] within specified ranges of normal." (Tr. 26). As previously described, the latter conclusion is not correct with regard to the Helm examination. The ALJ also cited the plaintiff's lack of physical therapy, referral to a pain clinic, or neurosurgical evaluation. (Id.). Actually, therapy was attempted with no reported benefit (Tr. 336-7) and Dr. Fogleman noted in December, 2004 that "further workup or consultation has been impaired by insurance status" (Tr. 378).

Even without these problems, the administrative decision provides no rationale for the rejection of Dr. Fogleman's restriction on work around hazards. There may also be an issue concerning hearing loss, since Social Security Ruling (SSR) 89-15 notes that "there are so many possible medical variables of hearing

13

06-470  Fee

loss that consultation of vocational reference materials or the assistance of a [Vocational Specialist] is often necessary to decide the effect on the broad world of work.  SSR 85-15, p. 7.

The decision will be remanded for further consideration.

This the 21st day of September, 2007.

Signed By:
G. Wix Unthank
United States Senior Judge